Lans Gateway v. Gateway 2000 Mr. Fong, whenever you're ready, give the rest of the members of the other side the opportunity to sit. Kevin Fong, Pillsbury Winthrop, Sean Pittman representing the two appellants, first Dr. Lans and second Uniboard, a Swedish company. May it please the court, let me begin by addressing first the appeal of Dr. Lans, who is a Swedish scientist. He's not a lawyer. His American lawyers, the Aducci law firm, had sole discretion in deciding whether or not to pursue litigation under the terms of their engagement letter at A207. His American lawyers then decided who should be the plaintiffs in the lawsuit, and on several occasions they filed complaints without giving either Dr. Lans or Uniboard a copy at A1173 and A1181. What about the fact that they did send a copy of that to his Swedish lawyers to review? Did they send a copy of that to the Swedish lawyers? Are we talking about the first complaint? The first complaint. Lans complaint. Dr. Lans' testimony, which I believe is undisputed, is that he never saw a copy of that. So there may be evidence in the record that it went from AMS, the law firm, to Delphi, but Dr. Lans' testimony is that he never saw a copy of the complaint filed in his name until after it was actually filed. Is that an issue of credibility determined by the lower court as to whether or not he saw it? Even if the trial court were to totally disbelieve Dr. Lans' testimony, there's still no evidence that it actually got into his hands. You could wipe out his testimony that he never saw it, but there's still no documentation of the transmittal from either Delphi or AMS to Dr. Lans. So I think you would be left with essentially a void in the record under those circumstances. So eight years, essentially, after all of this happened, the district court awarded a million dollars in attorney's fees against Dr. Lans, but not the law firm, the Adoochi law firm, that had represented him. We submit this is clear error and an abuse of discretion, the two steps in the standard of review for an award of fees under Section 285. It's clear error because a review of the record should leave a, quote, firm conviction that a mistake has been committed. That's from the Stevens case. And turning to the second prong, it's an abuse of discretion because the result is clearly unreasonable, which is from the Forrest Labs case. There are two undisputed facts. First, prior to the filing of the Lans lawsuit, Dr. Lans sent Mr. Mastriani, his lawyer, a letter stating, quote, the patent has been transferred to the company for many years ago, and the agreement with IBM was made with Uniboard. That's at A266. It's a February 19, 1997 fax, which was marked and admitted into evidence as AMS Exhibit 4 in the proceedings below. Similarly, after the filing of the Lans complaint, Dr. Lans suggested to the Adoochi law firm that a particular interrogatory response be changed to read, and here's how he suggested it be changed. Quote, the company Uniboard AB is the owner of the 986 patent rights, but the patent is still registrated in Mr. Hockenlans' name. That's at A394 of the record. It's a January 29, 1999 email, again marked and admitted into evidence as AMS Exhibit 8. So this evidence — Was that assignment ever registered with the Patent Office? Apparently not. There's no evidence that it was ever registered with the Patent Office. As Dr. Lans had argued on the motion to reconsideration in his motion for judicial notice, if one looks today on the Patent Office website, there is no assignment seen. So I don't think any of the parties dispute that it was never — the fact that it, in fact, never was registered with the Patent Office. But you can still assign a patent without listing it in the Patent Office, can't you? I think so. I think that's the testimony of Mr. Mastriani. He acknowledges that there, in fact, could be an assignment even if nothing shows up on the Patent Office website. Mr. Mastriani was aware of that possibility. What's the status — in your briefs you list a pending case or someone lists a pending case between your client and the law firm. What's the status of that case? It's still pending, stayed for the time being. So it's still an active case in the D.C. Superior Court. Stayed pending the outcome of this case? Or stayed — what's the basis for the stay? As a practical matter, it stayed pending the outcome in this case. I'm not sure, because I'm not counsel in that action, whether, in fact, the stay expressly says it's pending the resolution. But for all practical purposes, that's the reasoning behind it. Is it in D.C. Superior Court or Federal Court? I believe it is D.C. Is it Federal — it's not Federal Court? I believe it's D.C. Superior Court, but I will check. No, it's D.C. District Court. I misspoke. D.C. District. The District Court for the District of Columbia. At the very least, the District Court abused its discretion in awarding attorneys' fees, assuming that this is an exceptional case for a moment. It was an abuse of discretion to hold Dr. Lons and Uniboard liable for the defendants' fees while holding that the Adducci law firm is not liable. Because on this record, the Adducci law firm had sufficient information to put it on notice that there was at least an issue as to whom should be named as plaintiffs. Because after all, as I've said, Dr. Lons did inform his attorneys that the 986 patent had been transferred to Uniboard on at least two occasions. But the District — one of the findings, as I recall, by the District Court was that the firm did a title search. Did? A title search to convince themselves that he was the owner and that the assignment was locked up in some file cabinet belonging to Mr. Lons' accountant. Right? You don't take issue with those factual findings. That's slightly different from the focus of our argument on abuse of discretion. On the issue of who had or who should have had the actual assignment that would have shown that — But I thought this went to what they knew or should have known, which I thought was the point you were arguing here. Right. And as to what they knew or should have known, if you disregard Dr. Lons' testimony and focus solely on Mr. Mastriani's testimony at 1428-29, that testimony, which was live testimony before the District Court, shows that Mr. Mastriani and the AMS law firm knew that he didn't have a key document. And let me read just a brief passage which shows, in Mr. Mastriani's words, what he knew or didn't know. I'll skip the context on 1428, but picking up on 1429, A1429, line 7. Question. So you read the IBM license agreement, and you see that there is a document evidencing Uniboard's right to license. And you don't have that document from Dr. Lons. Correct. Answer. That's correct. He knew he didn't have a key document. That is, Mr. Mastriani knew he didn't have a key document. Here's what he did do. And in fairness, I should set forth what Mr. Mastriani says that he did do. He continues to say, and you know that Dr. Lons was represented by a lawyer named Berg. And I think that's what the question was directed to, the lawyer named Berg. Continuing. And you asked Delphi to contact Berg. Correct. Answer. Yes. Question. And they told you they did, and he didn't have anything. Correct. Answer. That's correct. And then question. And you did not contact Berg yourself to see whether this document evidencing the right of Uniboard to license the patent existed in Berg's files, did you? Answer. No, no. There was no need to because Delphi had already done that, and I trusted Delphi in that regard. So the essence of this is Mr. Mastriani knew before he filed the complaint there was a missing document. One might ask, did he ask Dr. Lons to track down that document from lawyer Berg? That's answered on the previous page, 1428. Mr. Fong, how do you answer the response in the interrogatory number five, which is listed on Appendix 864-52? That's under oath. And Mr. Lons objects to this interrogatory, at least on the following grounds. Subject to these objections, Mr. Lons responds as follows. There has been no assignment of the 986 patent. How do you answer that under oath? This is Mr. Lons saying there's been no assignment of the 986 patent. Is that a conflict? He had told his attorneys about a transfer. He had told them that the patent rights were owned by Uniboard. Given that, he had told his attorneys the information that they needed to help him craft the answer to that. But he answered under oath that there's been no assignment of the 986 patent, period. No qualifications or otherwise. There's been no assignment of the patent, according to Mr. Lons. So how are we to say that there's been an assignment of the patent if he answers under oath that there's been no assignment? In fact, the documentary evidence shows that there was assignment. The one thing which is undisputed here is that there was simultaneous with the IBM agreement an assignment. Well, there's also a document that came out of evidence subsequently signed by Mr. Lons as the individual and signed by himself also as a representative unit. We're talking about the clarification contact. Clarification. The district court discredited it. So for present purposes, we're assuming as we must that the district court was correct in assuming that that document either never existed or in fact wasn't a credible document. And for present purposes, we're assuming that that's the case. So are we to believe that there's been no assignment of the 986 patent as attested to by Mr. Lons? I think the evidence, now that all the evidence has come in, including the assignment itself and subsequent e-mails and the subsequent faxes, I think... The assignment on what basis was the patent assigned? What is that document showing the assignment? Clarification? No, no, no, no. The assignment that was signed simultaneous with the IBM agreement back in 1996 or 7. So we're going back. We're not relying upon the clarification agreement at all. So Mr. Lons knew about that assignment when he made the statement there's been no assignment of the 986 patent to answer the interrogatory. Well, in fact, he told his lawyers when he suggested how he thought the interrogatory response should be framed. He told his lawyers that he thought the interrogatory response should be framed to say the company Uniboard is the owner of the 986 patent rights, but the patent is still registrated in Mr. Hawkins Lons' name. That's what he told his lawyers, that he thought the proper response should be. As it ended up, that's not what was filed with the court, obviously. But he submitted that under oath. Yes. Thank you. You want to reserve your time? We'll add some time to your reply. Why don't you add about two minutes to the reply time? Okay, let me just finish the thought I had. Go ahead. I had dropped a few minutes ago, which is on 1428, Mr. Mastriani is specifically asked, did you call Dr. Lons and ask him if he had any of the Berg files? And the answer was no, because in Mr. Mastriani's mind, that was the charge of the Delphi firm. He never asked, you know, Dr. Lons to contact Lawyer Berg directly. I will reserve my time. Thank you. I understand, Ms. Mayer, that you will be arguing for nine minutes? Yes. And Mr. Adelman, you have six? Yes, Your Honor. Thank you. May it please the Court, my name is Amanda Mayer, and I am here on behalf of Appleease, Dell, and Gateway. I believe the best place to start is the issue that was just troubling the panel, and that is the stark inconsistencies before the district court that Lons made and that are throughout the record. As Your Honor mentioned earlier, there is an issue of whether or not certain credibility determinations were made by the court. And while we believe that the appellee's brief fully supports the affirmance of the district court's determination, the appellant's briefing and the intervener's briefing in this appeal in Mr. Fong's argument just a few minutes ago highlight that this really is just a third bite at the apple for appellants and that the issue before the court is just a rehashing of credibility determinations made by the district court before. Indeed, the briefs on appeal go into the evidentiary minutiae that the court dealt with before on a cold record once, affidavits, emails, documentary evidence. Judge Penn addressed that type of evidence and found that an award of fees was appropriate. Appellant's counsel then moved for reconsideration of that fee award and asked that the court not award fees on a cold record like that before this court, but instead consider live testimony. Judge Penn granted that request and held a two-day evidentiary hearing to which counsel for appellants referred earlier. That evidentiary hearing took place in March of last year. Both Mr. Lawrence and Mr. Mastrogiani were questioned for two full days. Even Judge Penn asked questions of Dr. Lawrence. After a review of deposition testimony, the live testimony that was before the court in that evidentiary hearing, and the documentary evidence, the court again found that a fee award was appropriate. We are now on appeal rehashing the very same evidence. On this appeal, in this argument a few minutes ago, transcript portions were read to this court, trying to show that there was some error below in what is fundamentally a credibility determination. But I think what they're also alleging is that this case is not exceptional in nature, which is really a legal determination that can be reviewed de novo? It is a legal determination that this court can review de novo, but believe that the bulk of their briefing and their argument of appeal has been on the credibility issues. I believe if you see page 46 of the appellant's brief, you will see that they say something to the effect of setting aside issues of credibility, and then they start to turn to some other things that they characterize as abusive discretion issues. There is no evidence that the district court erred in finding that this case was exceptional under 285. The recorders were pleat with Dr. Long's litigation misconduct with inconsistent statements that are the basis for the court's determination that the lawsuits were frivolous, that he had engaged in litigation misconduct. The factual determinations, which are reviewed for clear error, are the underpinning for his determination that this case was exceptional under 285. And so at core, this becomes an issue of whether or not he made correct credibility determinations, which is not clear error on appeal to choose between two competing interpretations of facts. Well, credibility determinations are very difficult to overturn on appeal. Absolutely. The witnesses are not here. The court's had an opportunity. And that is highlighted by a point reading a cold record in its argument to highlight some alleged inconsistency that the court has already addressed below. The court here has a cold record. This court and the United States Supreme Court have found that credibility determinations for the province of the trial court who has the ability to judge the credibility and the demeanor of the witnesses and that credibility determinations are entitled to great deference. Further, this court and the Supreme Court have found that it is not clear error, cannot be clear error for the fact finder to choose one version, one interpretation of competing evidence when two conflicting stories have been presented. And that's what we had below, and that's what we have here. The appellants and the interveners have focused this appeal on a rehash of evidence the court below already considered. The record is replete with inconsistencies by Dr. Lons. Your Honor addressed one of those inconsistencies in terms of an interrogatory answer earlier. There is also a great deal of motivation that is demonstrated by the record evidence below that forms the basis for those inconsistencies. As this court previously found, the reason Dr. Lons entered into the agreement, had Univort enter into the agreement with IBM, was for tax reasons. While Dr. Lons is a layman, he is not ignorant of business, and he is not ignorant of the impact of his actions on his income and on his personal position. He made a studied decision to have Univort execute that license and executed an assignment to Univort in connection with that to save himself close to a million dollars in taxes. Later, when he was personally named as a defendant in a declaratory judgment action, he told his attorneys, get me out of this. I assigned this to Univort years ago. Then, facing dismissal below, he submitted an internally inconsistent affidavit to the court that said, one, that he didn't remember the assignment to Univort, and two, that he thought it was invalid. There are other instances of inconsistencies on the record below. For example, the interrogatory answer that he suggested could have been changed was in January of 99. Just months later, in August of 99, he submitted an affidavit to the court saying that he had forgotten about the assignment to Univort. It's a mere eight months. The inconsistencies were just too great. The court below determined that Dr. Lons simply was not credible. He said in his opinion below that this was an issue. The main issue before the court was Dr. Lons' credibility. He found the inconsistencies too great. They constituted litigation misconduct, showed that the litigation was frivolous, and that was the basis for the 285 finding. Can this court take a look at those valuations of the inconsistencies and say that the lower court was wrong in weighing them that way? I do not believe that that is appropriate at this level of review. I believe that just recently in one of the cases cited, I believe it was you would pronounce it Cowell, this court has found that it cannot reverse the lower court simply because it would have made a different decision on factual determinations and credibility determinations of the court. Even on documentary evidence? On documentary evidence, I believe that the court does have the same record in that regard, but this is not an instance where this case was determined merely on documentary evidence. It was determined on live witness testimony, which is not the case. Hypothetically, if there were only two documents and they were inconsistent with each other and you could draw different conclusions from those documents, would an appellate court have the ability to say, well, they drew the wrong conclusions? If it's a conclusion as to the credibility of the documents and what those documents say, I don't believe that it would be appropriate to go that far. Well, credibility of the documents. I don't think there's credibility of the documents. They're inconsistent documents. People can read them differently. Well, given that choice, then the trier fact, the fact finder in this case being the judge, had the opportunity to look at that, and then that would devolve just into any other factual determination, which is entitled to deference on appeal. So you don't think we need to even go that far? No, I do not. Can you stand by that position? Yes, Your Honor. Thank you. And I am at the end of my time, so I will pass to Mr. Handelman. Unless there are further questions. Thank you. Mr. Handelman. Good morning, Your Honors. May it please the Court, my name is Aaron Handelman, and I'm here on behalf of the law firm of Adusi, Mastriani, and Schomburg and their principals. I stand here today, and let me say this, to correct the record, I am handling the case that is pending before Judge Penn in the U.S. District Court, a federal court, and I will point out that, in fact, the case was not stayed for any purposes having anything to do with all due respect to this court. It was stayed because Lons' counsel filed a motion to stay the case pending a determination by Judge Penn of dispositive motions that we filed on behalf of the Adusi law firm. And that's why it stayed. We were heavily into discovery, and in fact, as I said, it was Lons' counsel that filed it. Let me also say... And that's before Judge Penn also? Before Judge Penn. And it involves Delphi, the Swedish law firm as well, and it's a legal malpractice. It involves very similar issues, of course. I would say this, that the counsel has in a sense admitted the credibility-finding problems that his client has. When he submitted in response to Your Honor's question that the clarification agreement, we accept the premise that that was discredited by the court. That's the very point here. Judge Penn held an evidentiary hearing. Again, after allowing the depositions of both Mr. Lons and Mr. Mastriani, two-day evidentiary hearing, he took evidence, and he heard the testimony of Mr. Lons. And in effect, his findings show, and he was very patient. It was like a show game. As new facts were discovered coming from Lons, he shifted his story. So first he says, as he says in the answers to interlocutors, no assignment. No assignment. And when counsel made reference to, I believe it was the e-mail that said, I have assigned the patent, that's incorrect. The document as we know it in our brief, it's I've assigned the patent rights. And when the evidence showed and Mr. Mastriani testified, when he got that e-mail, he said he called the client. He testified to that. He said, what are you talking about? But if you look at the district court's opinion, he concludes initially, based on the facts, he makes quite a number of observations about the firm's conduct, all of which are quite negative, right, in terms of the failure to investigate the ownership or whatever. So based on the facts, his conclusions with respect to the evidence were a failure to investigate properly, correct? With all due respect, that is not entirely correct because that's Lons 1. In other words, when the case came out and the judge looked at it and he said, it actually was the motion for summary, the motion for attorney's fees, that would have been the September 26, 2001 opinion. And he said, as he evaluated 285 versus 1927, and he said, I am troubled. I am troubled by the investigation issue. And that's really the only thing I think he was troubled by. But that was corrected when the judge, I'm considering the motion for reconsideration filed by Lons with new counsel. He then heard the testimony. And we filed a motion to intervene because there are documents that we wanted the court to see that were subject to attorney-client privilege. When Judge Penn granted that motion, Judge Penn allowed us to provide the documents. And when he saw it, that's why you don't see in the opinion that he's troubled anymore. He's not troubled anymore because he saw that the evidence showed that the Ducey Law Firm interviewed him. They went to database. They checked the things out. They certainly checked out if there was an assignment. They went back to the original patent files. They looked at the European counterpart patent. And they found Lons was the owner. And then the record shows that they had this Atachi agreement. That was a year before they were hired, which Lons licensed himself. And so what happened was they did everything possible, and the court recognized that. And the significant point was... What is the attorney's responsibility, ethical responsibility, in making a due diligence search of determining ownership of a patent? I think an attorney has to evaluate how sophisticated, what kind of intelligence his client has, what level of sophistication. An attorney then interviews his client and obtains all the information and then goes around to check all publicly available information. I don't think it's any different. I'm not a patent attorney. I think it's the same standard. And they did that. They checked everything out. And the fact is, and, of course, here they had a Swedish counsel. Everyone checked out everything, and Lons insisted. And, moreover, so I think that's the responsibility, and they carried it out in total. In fact, every time Lons raised the question, they raised the question back, are you sure? And he reiterated, I am the owner. And let's not mistake this. Mr. Lons is, in fact, a sophisticated inventor. As the record shows and as the judge found, he had been involved in patents 10 years, a decade before he ever met the adducee law firm. He dealt with lawyers in this country. He dealt with lawyers in Europe. He was sophisticated enough such that he drafted the clarification contract, that so-called document that said eight days after the assignment, he drafted the document from Unibor to himself. He drafted that document. So we're talking about a sophisticated client. The problem that Mr. Lons has, and the problem on this appeal is very simple. When the judge allowed there to be an evidentiary hearing, Mr. Lons had his full day in court, due process, testimony, and what happened is there's a July 9, 2001 email, which is in the record, referred to in the briefs, I would submit it's at A808, where Mr. Lons sends an email, July 19, 2001, to the adducee law firms. And he says, I have not forgot the assignment. I did not have it, but I have not forgotten it. That's key, and that was key. I would submit it in part of the credibility decision to the judge, because this very document totally, completely contradicted his affidavit under oath, August 22, 1999, to Judge Pett, where he said, I forgot about the assignment. So he starts off the case. He knows the assignment. Oh, I see my time is up. I went faster. Do you have anything further to add? No. Questions? I thank you very much, and I'm sorry I didn't look it out. Thank you for your presentation. Mr. Fong? Could you give Mr. Fong four minutes? I'm sorry, Mr. Chairman. What? I didn't hear what you said. Four minutes. Four minutes total? Right. Thank you, Mr. Fong. Looking back, Your Honors, the turning point in the case was August 1999, when the defendants moved for summary judgment. From that point on, the Adducee Law Firm had an inherent conflict of interest, because there was always the potential for a malpractice action, and there was also the potential for the Adducee Law Firm being liable for the defendant's fees. That colored everything that happened thereafter. For example, A582, after the conflict arose, Mastriani told the district court that he had been repeatedly informed by Mr. Lons that no assignment had taken place. That's what he told them. But it wasn't true. There was documentary evidence that he had been told about a transfer. In fact, looking at A281, in his handwritten notes, he noted on the very day that he received the February 19 facts from Dr. Lons, his notes say, Uniboard assignments. So he knew from at the very latest, February 19, 1997, that there was an issue as to Uniboard assignments. The whole presumption of the district court was that there was some intentional malicious concealment by Dr. Lons. But that just wasn't the case. There are at least two instances in which Dr. Lons informed his American lawyers about the existence of a transfer, and that Uniboard is the owner of the patent rights. And the attorneys perceived that because that's what the attorney's handwritten notes say, Uniboard assignments. Excuse me. How do we re-weigh all of this evidence? Are we supposed to plow through the record and make a determination and re-weigh it, which has already been done by Judge Penbelow? You're supposed to certainly look at the whole record, but look at it through the lens of clear error. Does this court, looking at the entire record, come away with the definite and firm conviction that a mistake has been made? And we submit that, in fact, at the end of the day, a mistake has been made. There's only one reasonable result in this case, and that is that the award of attorney's fees must be reversed. Mr. Fong, the difficulty that I'm having, and maybe it's a similar concern of Judge Gaius, I don't know, but the difficulty I'm having with your argument is that you selectively pick and choose little snippets of information from the record at various points, which, if looked at in isolation, might suggest an outcome different from the outcome in the case. But that's not a proper analysis. The district court quite properly looked at all of the evidence and weighed and evaluated and considered the credibility of the witnesses that testified and came to a conclusion based on the overall record. And it's very difficult, I think, to say that the district court's actions in this regard were wrong in evaluating all of this evidence. Picking and choosing, but picking and choosing the evidence that is undisputed, or, in the case of Mr. Mastriani's testimony at 1428, the testimony of Mr. Mastriani himself. I mean, this is not testimony that the district court overlooked. I mean, all of this was before Judge Penn. Well, some of it certainly wasn't explained. There's no explanation in the denial of the motion for reconsideration of the documentary evidence, the facts, and the email putting the Mastriani firm on notice. So just one sentence to conclude here. At a minimum, the district court was working under a clearly erroneous assumption. The district court opinion rises or falls on the assumption that there was a concealment by Dr. Lanz of the assignment from his attorneys. I think that is clearly erroneous. That one assumption, which is pivotal to all of the district court's analysis, is clearly erroneous. This court should be left with the definite and firm conviction that a mistake has been committed here. Thank you, Your Honor. Thank you, Mr. Fong. Case is submitted.